**FILED**
**WILLIAMSPORT**

NOV 1 3 2003

Per_____
         DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISTOPHER FURNARI,                :

      Petitioner,                  :

   v.                                :  **CIVIL ACTION NO.**

UNITED STATES PAROLE COMMISSION :     4:03cv 2046
and WARDEN, Federal Correctional
Institution - Allenwood, Pa.,       :

      Respondent.                  :

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**
**BY A PRISONER IN FEDERAL CUSTODY**

    Christopher Furnari petitions this Court pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus, challenging the decision of the respondent United States Parole Commission dated November 28, 2002, denying him release on parole from a pre-Sentencing Reform Act federal sentence imposed in 1987. The Parole Commission's action was ostensibly a *de novo* reconsideration, undertaken as the result of an order entered in prior habeas corpus proceedings in this Court. In support of his petition for release from unlawful custody, petitioner Furnari, by undersigned counsel, states:

## PARTIES

1. The petitioner, Christopher Furnari, is an inmate at the Federal Correctional Institution - Allenwood, located in White Deer, Pennsylvania, within the jurisdiction of this Court. His Bureau of Prisons Register Number is 19815-054. Petitioner will be 80 years old on April 30, 2004.

2. The respondent United States Parole Commission ("USPC") is an independent agency within the United States Justice Department, charged by law with considering and setting petitioner's actual date of release from confinement. 18 U.S.C. § 4203(b) (prospectively repealed). By virtue of the USPC's actions, challenged in this petition, petitioner Furnari continues, after more than 16 years (since November 19, 1986), to be held in the custody of the Attorney General.

3. The respondent Warden of the medium security Federal Correctional Institution - Allenwood is responsible for the terms and conditions of the petitioner's confinement. The warden is sued solely in an official capacity as petitioner's immediate custodian; no actions of the Warden or of the Bureau of Prisons are at issue.

## JURISDICTIONAL ALLEGATION

4. This Court has jurisdiction to issue a writ of habeas corpus and to grant relief as law and justice require under 28 U.S.C. §§ 1331, 2241(a),(c)(1) and 2243, because the petitioner is confined within the territorial jurisdiction of this Court, where he is held in the custody of the respondents under color of the authority of the United States.

## FACTUAL ALLEGATIONS INCLUDING EXHAUSTION OF REMEDIES

5. On or about February 25, 1985, petitioner was named in an indictment filed in the United States District Court for the Southern District of New York, under Docket No. 85-CR-139. Following an eleven-week jury trial on a third superseding indictment (No. SSS 85-CR-139 (RO)), Mr. Furnari was convicted of RICO conspiracy, 18 U.S.C. § 1962(d), a substantive RICO count, id. § 1962(c), conspiracy to commit extortion and twelve counts of extortion under the Hobbs Act, id. § 1951, and six counts of aiding and abetting labor bribery in violation of the Taft-Hartley Act, 29 U.S.C. § 186(b) and 18 U.S.C. § 2.

6. The offenses charged in the indictment concerned certain activities of "the Commission," which was alleged to be a sort of power-sharing and dispute-resolving board for the five La Cosa Nostra ("LCN") crime "families" of New York City. In his capacity as "consigliere" of the "Lucchese Family" of LCN, petitioner allegedly "from time to time," between the early 1980s and 1985, "was delegated to represent the Lucchese Family to the Commission." Third Superseding Indictment ¶10.d., at 10.

   a. The RICO count of the indictment alleged that petitioner Furnari, his five co-defendants and others "constituted an enterprise as defined in" 18 U.S.C. § 1961(4), "that is, a group of individuals associated in fact, which enterprise is often described as the 'Commission' of La Cosa Nostra ('The Commission') ...." Id. ¶1, at 2.

   b. As stated in the RICO count, "[e]ach La Cosa Nostra Family was a separate organization." Id. ¶5, at 4. "The

-3-

Commission was an enterprise distinct from the individual Families, but it was comprised of Bosses and Acting Bosses -- acting in concert with other high-ranking officers -- from the five La Cosa Nostra Families which had their headquarters in New York City." Id. ¶6, at 4. "The general purpose of the Commission enterprise was to regulate and facilitate the relationships between and among La Cosa Nostra Families." Id. ¶8, at 5.

  c. "Among the means and methods" by which the defendants allegedly "conducted and participated in the conduct of the enterprise's affairs," the RICO count charged, id. ¶9, at 6, were these: "b. The Commission resolved a leadership dispute within the Bonanno Family, and between the Bonanno Family and other La Cosa Nostra Families, by authorizing the murders of Carmine Galante, a/k/a 'Lilo,' who was Boss of the Bonanno Family, and Leonard Coppola and Giuseppe Turano, his associates"; and "c. The Commission authorized certain other murders." Id. at 8. Petitioner Furnari was not accused of participating, either directly or indirectly, in the Galante murders, id. ¶¶ 32-34, at 27-28, nor in any others.

  d. The Hobbs Act extortion count(s) of the indictment specifically charged that the Commission controlled the allocation of contracts to pour concrete in the New York City construction industry where the costs for concrete exceeded $2 million. Id. ¶9.a., at 7. "The Commission exploited its control over these concrete-pouring contracts in order to demand and receive payoffs from concrete contractors." Id.

e. The Taft-Hartley labor bribery counts of the indictment specifically consisted of the receipt by co-defendant Ralph Scopo, president and business manager of the Concrete Workers District Council, of the extorted payoffs from the concrete contractors.

f. The RICO charge further encompassed an accusation of loansharking in violation of 18 U.S.C. §§ 891-892, in which petitioner was also not alleged to have had any involvement. Id. ¶35, at 28.

7. On January 13, 1987, Judge Richard Owen sentenced petitioner Furnari to serve an aggregate term of 100 years' imprisonment, consisting of five consecutive 20-year terms and several additional concurrent terms, under pre-Sentencing Reform Act law. This kind of sentence allows parole, in the discretion of the respondent USPC, after service of at least ten years. 18 U.S.C. § 4205(a) (former provision). Petitioner was also ordered to pay a fine of $240,000 and special assessments totalling $900. Judgment was entered that day.

8. Following an initial remand of co-defendant's appeal (see United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (in banc)), the Second Circuit affirmed petitioner's convictions and sentence. See United States v. Salerno, 868 F.2d 524, 527-31, 534-38, 540-43 (2d Cir.), cert. denied, 491 U.S. 907 (1989).

9. On December 3, 1996, when petitioner had served ten years (during which he "substantially observed the rules of the institution or institutions to which he has been confined," 18

U.S.C. § 4206(a)) and thus had achieved parole eligibility, the USPC granted petitioner a parole hearing.

  a. Prior to the hearing, on January 2, 1996, Assistant U.S. Attorney David Kelley (S.D.N.Y.), then-chief of organized crime prosecutions, wrote a letter to the sentencing judge, acknowledging that petitioner was not in fact involved in the one murder plot described in the indictment (the Galante/Coppola/ Turano murders), which took place prior to petitioner's alleged membership on the "Commission." By order dated January 17, 1996, the sentencing court directed that the 1/2/96 Kelley letter be attached as a correction to petitioner's Pre-Sentence Investigation Report (PSI) and forwarded to the USPC.

  b. AUSA Kelly appeared at the December 1996 parole hearing and there presented summary, hearsay evidence claiming that between 1975 and 1985 petitioner had ordered or was otherwise vicariously liable for several murders, attempted murders, or conspiracies to murder. None of these were part of the indictment offenses, nor were they activities of "the Commission." Conceding that this information came principally from a Mafia turncoat witness named Anthony Casso, himself an admitted multiple murderer, AUSA Kelley nevertheless asserted that the information was reliable, and that Casso was eligible to appear as a government witness at upcoming trials.

  c. Petitioner, represented by counsel, presented substantial evidence at the 1996 parole hearing contesting the reliability of AUSA Kelley's information. At no time during the

-6-

pendency of those parole proceedings did AUSA Kelley disclose to the USPC that Casso's credibility as an informant was being questioned by government agents and attorneys as early as 1994, that Casso had failed a polygraph examination that year, that he had attempted to tamper with another cooperating witness in late 1994, that in April 1997 Casso admitted numerous additional lies and forms of continuing misconduct including bribery of prison officials, and that no later than mid-1997 Casso had been determined by the government to be a liar, whose "spurious allegations" they would not present in court.

     d.  The USPC hearing examiner declared that he presumed evidence coming from a government source to be reliable, assigned petitioner to parole offense severity Category 8 (the most serious), and recommended denial of parole for at least an additional 15 years.

     e.  The examiner's recommendation was adopted by the Regional Commissioner by notice dated January 8, 1997, and upheld on appeal August 19, 1997, by the USPC National Appeals Board.

    10.  Petitioner then sought habeas corpus relief from this Court.  See Furnari v. Warden, FCI-Allenwood, et al., No. 4:CV-98-0222.  During the time that this prior habeas petition was pending, petitioner received a two-year interim review hearing, as mandated by 18 U.S.C. § 4208(h)(2) (prospectively repealed) and 28 C.F.R. § 2.14.

     a.  At the 1998 interim hearing, petitioner presented new evidence of the government's disavowal of Casso's credi-

-7-

bility as a witness, in the form of an affidavit of an Assistant U.S. Attorney which had been presented in the Eastern District of New York to justify the abrogation of Casso's plea and cooperation agreement.

    b. The USPC nevertheless denied a <u>de novo</u> hearing and declared itself unpersuaded that the initial information on which it had acted was inaccurate.

    11. This Court (Muir, J.) initially denied habeas corpus relief in an 18-page Order filed April 12, 1999. On appeal, the Third Circuit reversed and remanded. <u>Furnari v. Warden</u>, 218 F.3d 250 (3d Cir. 2000).

    a. The Court of Appeals held that the USPC's explanation for its failure to reconsider its original decision at the interim hearing violated its statutory obligation under 18 U.S.C. § 4206(b) to provide rational and particularized reasons for its decisions.

    b. The Court of Appeals ruled that "The government's own determination that Casso had lied to it about many matters calls into question whether the Parole Commission had a rational basis for its decision to the extent that decision was based on information from Casso." 218 F.3d at 257.

    12. On remand, by Order filed September 28, 2000, this Court (Muir, J.) directed that the USPC either provide petitioner with "a new statement of reasons consistent with the Court [of Appeals'] decision," or else "afford [him] a de novo hearing" within 90 days.

13. In response, the USPC convened a _de novo_ hearing on December 8, 2000. The same hearing examiner conducted this hearing as had presided at the 1998 interim hearing.

   a. Although AUSA Kelley did not appear in person at the _de novo_ hearing, a letter from him to the USPC dated September 25, 2000, was considered as evidence. In that letter, Kelley attempted to offer reasons why Casso's "historical information" (a category which apparently included his accusations against Mr. Furnari) could be trusted even though his later statements were false. The 2000 Kelley letter also identified the other sources of information which supposedly corroborated Casso, which were the same as he had cited in 1996. The Kelley letter gave only summary conclusions, not specific facts or details, and once again did not disclose the underlying evidence, such as FBI Form 302 reports of debriefings or transcripts of trial testimony. Petitioner was again represented by counsel, who presented written and oral rebuttal of AUSA Kelley's charges, including transcripts of the testimony of the very witnesses to whom the prosecutor pointed.

   b. At the conclusion of the hearing, the examiner announced that he was recommending that the case be considered under the USPC's "original jurisdiction" (rather than being initially decided by the Regional Commissioner) and that petitioner receive a 15-year set-off from the day of the new hearing (_i.e._, that petitioner be released no sooner than a date four years later than had been set after the 1996 hearing).

14. The Regional Commissioner did not place petitioner's case in the USPC's "original jurisdiction," as the examiner had recommended. Considering the case himself, however, the Commissioner upheld the examiner's recommendation of a 15-year set-off, but made it retroactive to the date of the original hearing.

15. Again, petitioner appealed to the USPC National Appeals Board, supported by a letter of counsel dated January 26, 2001. On April 24, 2001, the National Appeals Board denied the appeal in a three-page ruling explaining why the USPC found Casso's allegations of murder and attempted murder, as related by AUSA Kelley, to be sufficiently corroborated or reliable.

16. On April 4, 2002, Mr. Furnari filed a second habeas petition with this Court. See <u>Furnari v. U.S. Parole Commission</u>, No. 4:02-CV-0555.

17. On July 18, 2002, in a 28-page Order, this Court granted Mr. Furnari's petition, in part, and ordered that:

> The Parole Commission shall, within 60 days after the date of this order, reevaluate Furnari's application for parole in accordance with the version of 28 U.S.C. § 2.20 in effect when Furnari committed the underlying offenses.

Order at 28. The Court based its decision on a determination that the Ex Post Facto Clause, U.S. Const. art. I, § 9, bars the Commission from applying to the petitioner any rule likely to increase his time to serve and post-dating his offenses, the latest of which were allegedly being committed up to the filing of the indictment on February 25, 1985.

18. Twenty-eight days later, on August 13, 2002, the Parole Commission issued the following decision:

> In compliance with the order of the United States District Court or the Middle District of Pennsylvania dated July 18, 2002, the Commission has reviewed your case on the record, without reference to or application of the presumption against parole for certain Category Eight offenders contained in the Note to the Parole Guidelines, Table, 28 C.F.R. § 2.20. The Commission orders no change in its prior decision that parole is denied and that you shall serve to a 15 year reconsideration hearing in December, 2011. Without presuming that you should be denied parole, the Commission finds that a decision more than 48 months above the guideline minimum of 100 months (and denial of parole) is warranted based on the following pertinent case factors: a high-ranking member of a Mafia crime family, you are responsible for multiple murders (Schleifer[,] Taglianetti[,] and DeCicco) and attempted murder (Abinanti) under a theory of vicarious liability, and also because you personally solicited or ordered some of the crimes. These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization. The Commission continues to rely upon the reasoning and conclusion about the evidence contained in the April 24, 2001 Notice of Action on Appeal.

19. The petitioner appealed to the USPC National Appeals Board, supported by a letter of counsel dated September 11, 2002. On November 14, 2002, the National Appeals Board denied the appeal in a two-page ruling asserting that the USPC's action complies with this Court's Order and rejecting the petitioner's other claims. Those claims were that the Commission violated: (a) the petitioner's Due Process rights and the Commission's own rules when it "conducted the instant review without notice to Mr. Furnari or any opportunity for him to be heard ..."; (b) its rules when it misidentified the petitioner's "present offense behavior" to assign him an offense severity rating of Category

Eight; (c) section 235(b)(3) of the 1984 Sentencing Reform Act when it failed to set a release date, (d) the decision of the Court of Appeals in <u>Furnari v. Warden</u>, 218 F.3d 250 (3d Cir. 2000); (d) its own rules when it based its decision on erroneous information and unreliable evidence; and (e) its own rules when it relied on inapt aggravating factors to justify a decision more than 48 months above the Category 8 guideline minimum of 100 months.

20. The decision of the National Appeals Board is the final decision of the USPC. 28 C.F.R. § 2.26(c). Petitioner has therefore exhausted his administrative remedies.

### CLAIMS FOR RELIEF

21. <u>The Commission Violated Due Process, the Governing Statute and Regulation, and its Own Rules when it Relied on Irrelevant Facts to Deny Parole.</u> The respondent violated the governing statute, 18 U.S.C. § 4206(a) (1976) as well as its own guidelines when it assigned petitioner Furnari to Offense Severity Category Eight based on past alleged criminal conduct which was not part of his "present offense behavior," <u>i.e.</u>, conduct which was not part of LCN <u>Commission</u> activities.

22. <u>The Commission's Finding that the Petitioner Is Responsible for "Multiple Murders" Lacks a Rational Basis.</u> The respondent's rationale for refusing to set a parole date is that the petitioner is responsible for "multiple murders" which were "committed in furtherance of the aims of a criminal organization." The Commission "continue[d] to rely upon the reasoning

and conclusion about the evidence contained in the April 24, 2001 Notice of Action on Appeal." That decision relied on information provided by Anthony "Gaspipe" Casso. Under the rationale of Furnari v. Warden, 218 F.3d 250 (3d Cir. 2000), the respondent's continued reliance on the discredited and unrehabilitated testimony of Casso "no longer can suffice." Id. at 257. Moreover, even if there was sufficient support for the Commission's finding, that finding would not qualify as an "aggravating factor" which could justify the denial of a parole date, since these crimes were not part of "the present offense behavior."

WHEREFORE, Petitioner prays that this Court:

(1) Enter an order directing the respondents to show cause before this Court why a Writ of Habeas Corpus should not be issued;

(2) After full consideration on the merits, issue the writ of habeas corpus, ordering the respondent Warden to release the petitioner from physical confinement, and the respondent USPC to place him on parole for the balance of his sentence; and

(3) Grant such other or further relief as law and justice require.

Dated: ~~October 31~~ November 12, 2003

Respectfully submitted,
THE PETITIONER

By: *[signature]*
PETER GOLDBERGER
JAMES H. FELDMAN, JR.
50 Rittenhouse Place
Ardmore, PA  19003

(610) 649-8200

<u>Attorneys for the Petitioner</u>