MC:lq
9-1635A/1C

A    213a

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

          - v -                   :          <u>INDICTMENT</u>

ANTHONY SALERNO,                  :          SSS 85 Cr. 139 (RO)
   a/k/a "Fat Tony,"
CARMINE PERSICO,                  :
   a/k/a "Junior,"
GENNARO LANGELLA,                 :
   a/k/a "Gerry Lang,"
ANTHONY CORALLO,                  :
   a/k/a "Tony Ducks,"
SALVATORE SANTORO,                :
   a/k/a "Tom Mix,"
CHRISTOPHER FURNARI,              :
   a/k/a "Christie Tick,"
RALPH SCOPO, and                  :
ANTHONY INDELICATO,
   a/k/a "Bruno,"                 :

          Defendants.

- - - - - - - - - - - - - - - - -x

<u>COUNT ONE</u>

The Grand Jury charges:

That at all times material to this Indictment:

<u>The Enterprise</u>

1.    ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE
PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang,"
ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a
"Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH
SCOPO, and ANTHONY INDELICATO, a/k/a "Bruno," the defendants,
and others known and unknown to the Grand Jury who are not named

MC:1q
9-1635A/1C

A  213B

as defendants in this Indictment, constituted an enterprise as
defined in Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact, which enterprise
is often described as the "Commission" of La Cosa Nostra ("The
Commission"), and which operated in New York and other locations
in the United States and other countries.

    2.   There existed a nationwide criminal society known
by various names, including "La Cosa Nostra," and "the Mafia,"
which society operated through entities known as "Families."
Each such Family had as its leader a person known as "Boss," or
"Father," or "Acting Boss," a deputy leader known as "Underboss,"
or "Second," and a high ranking official known as "Consigliere."
Each Family further operated through the participation of offi-
cers known as "Capos" or "Group Leaders," members known as
"Soldiers," and "Associates."

    3.   The Boss of each Family, with the assistance of
the Underboss and Consigliere, supervised, promoted, and pro-
tected the criminal activities of the Capos, Soldiers and
Associates of the Family, and, in return, received a part of the
illegal earnings of those Capos, Soldiers and Associates.

    4.   Five of the La Cosa Nostra Families had their
principal headquarters in New York City, although they operated
throughout the United States and abroad.  Each Family was often
identified by the name of its Boss or of a former Boss.  From

MC:lq
9-1635A/1C

A   213c

1931 up to and including the date of the filing of this
Indictment the succession of Bosses or Acting Bosses of the New
York City La Cosa Nostra Families included the following indivi-
duals:

<u>I</u>

Vito Genovese

Frank Tieri,
a/k/a "Funzi"

Anthony Salerno
a/k/a "Fat Tony"

<u>II</u>

Albert Anastasia

Carlo Gambino
a/k/a "Carl"

Paul Castellano,
a/k/a "Paulie"

<u>III</u>

Joseph Profaci

Joseph Colombo

Carmine Persico,
a/k/a "Junior"

Thomas DiBella (Acting)

Gennaro Langella (Acting)
a/k/a "Gerry Lang"

<u>IV</u>

Thomas Lucchese,
a/k/a "Tommy Brown"

Anthony Corallo,
a/k/a "Tony Ducks"

<u>V</u>

Joseph Bonanno

Carmine Galante

Philip Rastelli
a/k/a "Rusty"

Throughout this Indictment, the five Families headquartered in
New York will be described respectively as the Genovese Family,
the Gambino Family, the Colombo Family, the Lucchese Family and
the Bonanno Family.

MC:lq
9-1635A/1C

A   213D

5.    Each La Cosa Nostra Family was a separate organi-
zation.  Normally, the Boss and ruling officers of each Family
possessed the full authority to supervise, regulate, and direct
all illegal activities which involved or affected the interests
of officers and members of that particular Family exclusively.
However, illegal activities involving or affecting the interests
of officers or members of two or more La Cosa Nostra Families
exceeded the jurisdiction of any single Family.  To avoid "wars"
between Families, disputes between and among Families over the
control of illegal activities had to be resolved by a supreme
leader or body.  In or about 1931, the Bosses of the New York
and other La Cosa Nostra Families associated to form the "Commis-
sion" to serve as the council for La Cosa Nostra Families.  From
1931 up to and including the date of the filing of this Indict-
ment, the Commission had the power to resolve disputes and to
regulate relations between and among La Cosa Nostra Families.
Furthermore, from in or about the mid-1950's up to and including
the filing of the Indictment, the Commission occasionally assumed
the power to intervene in Family leadership disputes that could
not be resolved within a particular Family.

6.    The Commission was an enterprise distinct from the
individual Families, but it was comprised of Bosses and Acting
Bosses -- acting in concert with other high-ranking officers --
from the five La Cosa Nostra Families which had their head-
quarters in New York City.  At different times the Commission

MC:lq
9-1635A/1C

A   213E

also included influential Bosses from a number of La Cosa Nostra
Families with their headquarters elsewhere in the United States,
including, but not limited to, Families in Chicago, Illinois;
Buffalo, New York; and Philadelphia, Pennsylvania.

7.    The Commission reached decisions and issued orders
through votes of all or some of the Commission members, or
through the actions or decisions of an individual Commission
member or members.  From time to time, an individual Commission
member or Commission members (or delegates) adjudicated disputes
or acted as spokesman in authorizing action on behalf of the
Commission.

### Purposes of the Enterprise

8.    The general purpose of the Commission enterprise
was to regulate and facilitate the relationships between and
among La Cosa Nostra Families.  Specific purposes of the
Commission included the following:

a.    Promoting and carrying out joint ventures
between and among La Cosa Nostra Families to obtain money through
illegal activities.   These Commission joint ventures included
a joint venture among several La Cosa Nostra Families which con-
trolled and dominated certain concrete contractors and allocated
payoffs on certain concrete contracts in New York City;

b.    Resolving actual and potential disputes and
regulating among the several La Cosa Nostra Families regarding

MC:lq
9-1635A/1C

A   213F

the operation, conduct, and control of illegal activities.  These
illegal activities included interference with interstate commerce
through extortion; extortionate extensions of credit, commonly
called "loansharking" or "shylocking"; gambling or "bookmaking";
infiltration and control of labor unions and labor
organizations.

> c.   Extending formal recognition to newly-elected
Bosses of La Cosa Nostra Families, and, from time to time,
resolving leadership disputes within a Family.

> d.   Taking such steps as were necessary to
preserve order in, between and among the La Cosa Nostra Families,
including authorizing acts of murder of certain La Cosa Nostra
Family members.

> e.   Approving the initiation or "making" of new
members or soldiers in the several La Cosa Nostra Families.

> f.   Establishing certain rules governing the
Families, officers and members of La Cosa Nostra.

> g.   Keeping persons inside and outside La Cosa
Nostra in fear of the Commission by identifying the Commission
with threats, violence, and murder.

### Means and Methods of the Enterprise

> 9.   Among the means and methods whereby the said
defendants and others conducted and participated in the conduct
of the enterprise's affairs at all times relevant to the Indict-
ment were the following:

MC:lq
9-1635A/1C

A   213 G

     a.   The Commission established a "Club" of cer-
tain construction contractors who poured concrete.  The Commission
controlled the allocation of contracts to pour concrete on
construction jobs where concrete costs exceeded two million
dollars.  The Commission and its co-conspirators and agents would
designate which contractor would be permitted to make the
successful bid on a particular contract.  Often other concrete
contractors would be directed to submit bids higher than that of
the designated winner.  The Commission enforced the rules of the
"Club" with the threat of punishing disobedient contractors, by
causing the contractors' supplies of cement to be stopped, or by
causing certain labor union leaders to create "labor problems"
for the contractors.  The Commission exploited its control over
these concrete-pouring contracts in order to demand and receive
payoffs from concrete contractors.  Among the illegal ways in
which the Commission implemented and exploited its control over
these concrete-pouring contracts were the following:

         (i) The defendants and their co-racketeers
and agents would and did extort, and conspire and attempt to
extort money and property from certain concrete contractors who
sought to bid for, who bid for, and who obtained concrete-pouring
contracts in connection with certain construction projects;

         (ii)  The defendants and their co-racketeers
and agents would and did exercise control over and influence the

MC:1q
9-1635A/1C

A   213H

decisions of the District Council of Cement and Concrete Workers, Laborers International Union of North America, and would and did agree to the payment of bribes to an official thereof, to wit, defendant RALPH SCOPO.

  b. The Commission resolved a leadership dispute within the Bonanno Family, and between the Bonanno Family and other La Cosa Nostra Families, by authorizing the murders of Carmine Galante, a/k/a "Lilo," who was Boss of the Bonanno Family, and Leonard Coppola and Giuseppe Turano, his associates.

  c. The Commission authorized certain other murders.

  d. The Commission participated in the selection of a new Boss for the La Cosa Nostra Family in Buffalo, New York.

  e. The Commission approved the admission of new members to the La Cosa Nostra society of criminals.

  f. The Commission promoted and encouraged a climate of fear to enhance the ability of the Commission and its members to control La Cosa Nostra and to obstruct justice.

<u>Roles of the Defendants</u>

  10. The defendants played the following roles, among others, in conducting and furthering the affairs of the enterprise:

MC:lq
9-1635A/1C

A 213 I

a.    At times relevant to this Indictment, the
defendant ANTHONY SALERNO, a/k/a "Fat Tony," was Consigliere,
Acting Boss and Boss of the Genovese Family, and was associated
in fact with and was a member of the Commission.

b.    At times relevant to this Indictment,
unindicted co-conspirator Paul Castellano, a/k/a "Paulie," was
Acting Boss and Boss of the Gambino Family, and was associated
in fact with and was a member of the Commission; and unindicted
co-conspirator Aniello Dellacroce, a/k/a "Neil," a/k/a "O'Neil,"
was Underboss of the Gambino Family, was associated in fact with
the Commission and from time to time was delegated to represent
the Gambino Family to the Commission.

c.    At times relevant to this Indictment, the
defendant CARMINE PERSICO, a/k/a "Junior," was Boss of the
Colombo Family and was associated in fact with and was a member of
the Commission; the defendant GENNARO LANGELLA, a/k/a "Gerry
Lang," was a Capo and Acting Boss of the Colombo Family, and was
associated in fact with and was a member of the Commission; and
the defendant RALPH SCOPO was a member of the Colombo Family, was
President and business manager of the District Council of Cement
and Concrete Workers, Laborers International Union of North
America ("Concrete Workers District Council"), and was
associated in fact with the Commission.

MC:1q
9-1635A/1C

A   213 J

d.    At times relevant to this Indictment, the
defendant ANTHONY CORALLO, a/k/a "Tony Ducks," was Boss of the
Lucchese Family, and was associated in fact with and was a member
of the Commission; SALVATORE SANTORO, a/k/a "Tom Mix," was
Underboss of the Lucchese Family, was associated in fact with the
Commission and from time to time was delegated to represent the
Lucchese Family to the Commission; and CHRISTOPHER FURNARI, a/k/a
"Christie Tick," was Consigliere of the Lucchese Family, was
associated in fact with the Commission and from time to time was
delegated to represent the Lucchese Family to the Commission.

e.    At times relevant to this Indictment, the
defendant ANTHONY INDELICATO, a/k/a "Bruno," was a capo and
soldier of the Bonanno Family, and was associated in fact with
the Commission.

f.    The defendants ANTHONY SALERNO, a/k/a "Fat
Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a
"Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE
SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie
Tick," and RALPH SCOPO obstructed, delayed and affected and
conspired and attempted to obstruct, delay and affect interstate
commerce through extortion from concrete contractors.

g.    The defendants ANTHONY SALERNO, a/k/a "Fat
Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a
"Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE

MC:lq
9-1635A/1C

A   213K

SANTORO, a/k/a "Tom Mix," and CHRISTOPHER FURNARI, a/k/a "Christie
Tick," aided and abetted the defendant RALPH SCOPO, the officer
of a labor organization, which organization represented employees
of concrete contractors who were employed in interstate commerce,
in defendant RALPH SCOPO's requests, demands, receipt and accep-
tances of payments of money from concrete contractors.

h.   The defendant ANTHONY INDELICATO, a/k/a
"Bruno," solicited the murders of Carmine Galante, a/k/a "Lilo,"
Leonard Coppola and Giuseppe Turano, and ANTHONY INDELICATO,
a/k/a "Bruno," committed those murders.

### The Racketeering Conspiracy

11.   From in or about 1970 up to and including the date
of the filing of this Indictment, in the Southern District of New
York and elsewhere, ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE
PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang,"
ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a
"Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and RALPH
SCOPO and ANTHONY INDELICATO, a/k/a "Bruno," the defendants, and
others known and unknown to the Grand Jury, being persons in
control of and associated with the enterprise described in
Paragraphs 1 through 7 above, which enterprise was engaged in,
and the activities of which affected interstate commerce, did

MC:lq
9-1635A/1C                         A   213L

unlawfully, wilfully and knowingly combine, confederate, conspire and agree together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

a.    The defendants each participated in the conduct of the enterprise through the commission of multiple racketeering acts, as set forth in Paragraphs 12 through 35 below.

### The Pattern of Racketeering

12.   The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5) consisted of the following acts:

Conspiracy to Extort Payoffs From
Certain Construction Companies

### Racketeering Act # 1

13.   It was a part of the pattern of racketeering activity that from in or about 1981 up to the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick,"

MC:lq
9-1635A/1C

A   213 ℳ

RALPH SCOPO, and others known and unknown to the Grand Jury,
unlawfully, wilfully, and knowingly would and did combine,
conspire, confederate, and agree together and with each other to
obstruct, delay, and affect commerce by extortion, in that they
would and did combine, conspire, confederate, and agree together
and with each other to obtain property, to wit, sums of money,
from and with the consent of certain New York City area construc-
tion companies in the concrete-pouring business, to wit, members
of a group called the "Club," and others, and their officers,
employees and representatives, which consent had been induced
by the defendants' wrongful use of actual and threatened force,
violence, and fear of economic loss, in violation of Title 18,
United States Code, Section 1951.

<u>Construction Extortions</u>

<u>Racketeering Act # 2</u>

<u>A</u>.

14.   It was a part of the pattern of racketeering
activity that in or about August, 1981, in the Southern District
of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a
"Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA,
a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE
SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie
Tick," RALPH SCOPO, and others known and unknown to the Grand
Jury, unlawfully, wilfully, and knowingly would and did obstruct,

9-1635A/1C

A   213H

delay, and affect commerce by extortion and would and did attempt to do so, in that they would and did obtain and attempt to obtain property, to wit, money in the approximate amount of $136,000, from and with the consent of the X.L.O. Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence and fear of economic loss, in violation of Title 18, United States Code, Section 1951.

**B.**

15.   It was a part of the pattern of racketeering activity that in or about August, 1981, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the X.L.O. Concrete Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount

mc:lq
9-1635A/1C

A    2130

of $136,000 from the X.L.O. Concrete Corporation in violation of
Title 29, United States Code, Section 186(b)(1), and Title 18,
United States Code, Section 2.

### Racketeering Act # 3

#### A.

16.   It was a part of the pattern of racketeering
activity that in or about May, 1983, in the Southern District of
New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a
"Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA,
a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE
SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie
Tick," RALPH SCOPO and others known and unknown to the Grand
Jury, unlawfully, wilfully, and knowingly would and did obstruct,
delay, and affect commerce by extortion and would and did attempt
to do so, in that they would and did obtain and attempt to obtain
property, to wit, money in the approximate amount of $326,000,
from and with the consent of the X.L.O. Concrete Corporation
and its officers, employees and representatives, which consent
had been induced by the defendants' wrongful use of actual and
threatened force, violence, and fear of economic loss, in viola-
tion of Title 18, United States Code, Section 1951.

#### B.

17.   It was a part of the pattern of racketeering
activity that in or about May, 1983, in the Southern District of

- 15 -

MC:lq
9-1635A/1C

A   213P

New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the X.L.O. Concrete Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $326,000 from X.L.O Concrete Corporation in violation of Title 29, United States Code, Section 186(b)(1), and Title 18, United States Code, Section 2.

## Racketeering Act # 4

### A.

18.   It was a part of the pattern of racketeering activity that in or about April, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a

MC:lq
9-1635A/1C

A   213Q

"Christie Tick," RALPH SCOPO, and others known and unknown to
the Grand Jury, unlawfully, wilfully, and knowingly would and
did obstruct, delay, and affect commerce by extortion and would
and did attempt to do so, in that they would and did obtain and
attempt to obtain property, to wit, money in the approximate
amount of $157,000, from and with the consent of the X.L.O.
Concrete Corporation and its officers, employees and representa-
tives, which consent had been induced by the defendants' wrongful
use of actual and threatened force, violence, and fear of
economic loss, in violation of Title 18, United States Code,
Section 1951.

<u>B.</u>

19.  It was a part of the pattern of racketeering
activity that in or about April, 1984, in the Southern District
of New York and elsewhere, the defendant RALPH SCOPO, president
and business manager of the Concrete Workers District Council,
being a representative of, and being an officer of a labor organi-
zation which represents and would admit to membership the
employees of the X.L.O. Concrete Corporation, who are employed
in an industry affecting commerce, aided and abetted by the
defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO,
a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY
CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix,"
CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and

- 17 -

MC:lq
9-1635A/1C

A   213 R

unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $157,000 from X.L.O Concrete Corporation in violation of Title 29, United States Code, Section 186(b)(1) and Title 18, United States Code, Section 2.

### Racketeering Act # 5

#### A.

20.   It was a part of the pattern of racketeering activity that in or about March, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $177,800, from and with the consent of the Century-Maxim Construction Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss, in violation of Title 18, United States Code, Section 1951.

MC:1q
9-1635A/1C                    A    2135

### B.

21.    It was a part of the pattern of racketeering activity that in or about March, 1984, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the Century-Maxim Construction Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $177,800 from the Century-Maxim Construction Corporation in violation of Title 29, United States Code, Section 186(b)(1), and Title 18, United States Code, Section 2.

### Racketeering Act # 6

### A.

22.    It was a part of the pattern of racketeering activity that in or about April, 1983, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a

MC:lq
9-1635A/1C

A   213T

"Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA,
a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks,"
SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a
"Christie Tick," RALPH SCOPO and others known and unknown to the
Grand Jury, unlawfully, wilfully and knowingly would and did
obstruct, delay and affect commerce by extortion and would and
did attempt to do so, in that they would and did obtain and
attempt to obtain property, to wit, money in the approximate
amount of $70,600, from and with the consent of the Technical
Concrete Construction Corporation and its officers, employees
and representatives, which consent had been induced by the defen-
dants' wrongful use of actual and threatened force, violence,
and fear of economic loss, in violation of Title 18, United
States Code, Section 1951.

<u>B</u>.

23.   It was a part of the pattern of racketeering
activy that in or about April, 1983, in the Southern District of
New York and elsewhere, the defendant RALPH SCOPO, president and
business manager of the Concrete Workers District Council, being
a representative of, and being an officer of a labor organiza-
tion which represents and would admit to membership the
employees of the Technical Concrete Construction Corporation,
who are employed in an industry affecting commerce, aided and
abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony,"

MC:iq
9-1635A/1C                    A   213u

CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE Santoro, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $70,600 from Technical Concrete Construction Corporation in violation of Title 29, United States Code, Section 186(b)(1), and Title 18, United States Code, Section 2.

### Racketeering Act # 7

### A.

24.    It was a part of the pattern of racketeering activity that in or about April, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did obstruct, delay and affect commerce by extortion and would and did attempt to do so, in that they would and did obtain and attempt to obtain property, to wit, money in the approximate amount of $65,000, from and with the consent of the Technical

MC:lq
9-1635A/1C

A  213 V

Concrete Construction Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss, in violation of Title 18, United States Code, Section 1951.

B.

25.   It was a part of the pattern of racketeering activy that in or about April, 1984, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the Technical Concrete Construction Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $65,000 from Technical Concrete Construction Corporation in violation of Title 29, United States Code, Section 186(b)(1), and Title 18, United States Code, Section 2.

RC:lq
9-1635A/1C

A    213 W

### Racketeering Act # 8

26.    It was a part of the pattern of racketeering activity that in or about March, 1982, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $73,000, from and with the consent of the Cedar Park Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss, in violation of Title 18, United States Code, Section 1951.

### Racketeering Act # 9

27.    It was a part of the pattern of racketeering activity that in or about April, 1982 in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie

MC:lq
9-1635A/1C

A  213 X

Tick," RALPH SCOPO, and others known and unknown to the Grand
Jury, unlawfully, wilfully, and knowingly would and did attempt
to obstruct, delay, and affect commerce by extortion, in that
they would and did attempt to obtain property, to wit, money in
the approximate amount of $134,000, from and with the consent of
the North Berry Concrete Corporation and its officers, employees
and representatives, which consent had been induced by the defen-
dants' wrongful use of actual and threatened force, violence, and
fear of economic loss, in violation of Title 18, United States
Code, Section 1951.

### Racketeering Act # 10

28.    It was a part of the pattern of racketeering
activity that in or about September, 1982, in the Southern
District of New York and elsewhere, the defendants ANTHONY
SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior,"
GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a
"Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER
FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known
and unknown to the Grand Jury, unlawfully, wilfully, and know-
ingly would and did attempt to obstruct, delay, and affect
commerce by extortion, in that they would and did attempt to
obtain property, to wit, money in the approximate amount of
$117,000, from and with the consent of the G & G Concrete Corpo-
ration and its officers, employees and representatives, which

9-1635A/1C

A  213 Y

consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss, in violation of Title 18, United States Code, Section 1951.

### Racketeering Act # 11

29.   It was a part of the pattern of racketeering activity that in or about May, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $95,000, from and with the consent of the S & A Concrete Company, Inc., a/k/a "S & A Structures, Inc." and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss, in violation of Title 18, United States Code, Section 1951.

### Racketeering Act # 12

30.   It was a part of the pattern of racketeering activity that in or about August, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a

9-1635A/1C

A  213aa

money in the approximate amount of $67,000, from and with the
consent of the S & A Concrete Company, Inc., a/k/a "S & A
Structures, Inc." and its officers, employees and representa-
tives, which consent had been induced by the defendants' wrong-
ful use of actual and threatened force, violence, and fear of
economic loss, in violation of Title 18, United States Code,
Section 1951.

### Murder of Carmine Galante

### Racketeering Act # 14

32.   It was a part of the pattern of racketeering that
from in or about September 1978 up to and including July 31,
1979, in the Southern District of New York and elsewhere, the
defendant ANTHONY INDELICATO, a/k/a "Bruno," and others known
and unknown to the Grand Jury did unlawfully, wilfully, and know-
ingly murder, and solicit, facilitate, and aid and abet the
murder of Carmine Galante, a/k/a "Lilo."

### Murder of Leonard Coppola

### Racketeering Act # 15

33.   It was a part of the pattern of racketeering that
from in or about September 1978 up to and including July 31,
1979, in the Southern District of New York and elsewhere, the
defendant ANTHONY INDELICATO, a/k/a "Bruno," and others known
and unknown to the Grand Jury did unlawfully, wilfully, and know-
ingly murder, and solicit, facilitate, and aid and abet the
murder of Leonard Coppola.

9-1635A/1C

A   213ßß

## Murder of Giuseppe Turano

### Racketeering Act # 16

34.    It was a part of the pattern of racketeering that from in or about September 1978 up to and including July 31, 1979, in the Southern District of New York and elsewhere, the defendant ANTHONY INDELICATO, "Bruno," and others known and unknown to the Grand Jury did unlawfully, wilfully, and knowingly murder, and solicit, facilitate, and aid and abet the murder of Giuseppe Turano.

### Loansharking Conspiracy

### Racketeering Act # 17

35.    It was a part of the pattern of racketeering activity that from in or about May, 1983, up to the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendants ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO. a/k/a "Tom Mix," and others known and unknown to the Grand Jury, did unlawfully, wilfully and knowingly combine, conspire, confederate and agree together and with each other to make extortionate extensions of credit, as that term is defined in Title 18, United States Code, Section 891, in violation of Title 18, United States Code, Sections 891 and 892.

(Title 18, United States Code, Section 1962(d).)

MC:lq
9-1635A/1C

A   213 cc

<u>COUNT TWO</u>

The Grand Jury further charges:

36.    Paragraphs 1-35 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

37.    From in or about 1970 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and RALPH SCOPO, the defendants, and others known and unknown to the Grand Jury, and from in or about 1970 up to and including May 4, 1981, and from in or about December 1, 1984, up to and including the date of the filing of this Indictment, ANTHONY INDELICATO, a/k/a "Bruno," a defendant, being persons in control of and associated with the enterprise described in Paragraphs 1 through 7 of Count One of this Indictment, unlawfully, wilfully, and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, which was engaged in and the activities of which affected interstate commerce, through a pattern of racketeering activity, to wit, the racketeering acts set forth in Paragraphs 1 through 35 of Count One of this Indictment as racketeering acts 1 through 17.

(Title 18, United States Code, Section 1962(c).)

MC:1q
9-1635A/1C

A   213 pp

## The Concrete Extortion and Payoff Counts

### COUNT THREE

The Grand Jury further charges:

38.   From in or about 1981 up to the date of the filing
of this Indictment, in the Southern District of New York and
elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony,"
CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry
Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO,
a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick,"
RALPH SCOPO, and others to the Grand Jury known and unknown,
unlawfully, wilfully, and knowingly would and did combine,
conspire, confederate, and agree together and with each other
to obstruct, delay, and affect commerce by extortion, in that
they would and did combine, conspire, confederate, and agree
together and with each other to obtain property, to wit, sums
of money, from and with the consent of certain New York City
area construction companies in the concrete-pouring business,
to wit, members of the "Club" and others, and their officers,
employees and representatives, which consent had been induced
by the defendants' wrongful use of actual and threatened force,
violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

MC:lq
9-1635A/1C

A  213 EE

## COUNT FOUR

The Grand Jury further charges:

39.    In or about August, 1981, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did obstruct, delay, and affect commerce by extortion and would and did attempt to do so, in that they would and did obtain and attempt to obtain property, to wit, money in the approximate amount of $136,000, from and with the consent of the X.L.O. Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence and fear of economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A   213 FF

COUNT FIVE

The Grand Jury further charges:

40.   In or about August, 1981, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the X.L.O. Concrete Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $136,000, from the X.L.O. Concrete Corporation.

(Title 29, United States Code, Sections 186(b)(1) and Title 18, United States Code, Section 2.)

9-1635A/1C

A   213 GG

## COUNT SIX

The Grand Jury further charges:

41. In or about May, 1983, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did obstruct, delay, and affect commerce by extortion and would and did attempt to do so, in that they would and did obtain and attempt to obtain property, to wit, money in the approximate amount of $326,000, from and with the consent of the X.L.O. Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A   213 HH

## COUNT SEVEN

The Grand Jury further charges:

42.   In or about May, 1983, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the X.L.O. Concrete Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $326,000 from X.L.O. Concrete Corporation.

(Title 29, United States Code, Section 186(b)(1)
and Title 18, United States Code, Section 2.)

MC:lq
9-1635A/1C

A    213 II
COUNT EIGHT

The Grand Jury further charges:

43. In or about April, 1984, in the Southern District
of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a
"Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA,
a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks,"
SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a
"Christie Tick," RALPH SCOPO, and others known and unknown to
the Grand Jury, unlawfully, wilfully, and knowingly would and
did obstruct, delay, and affect commerce by extortion and would
and did attempt to do so, in that they would and did obtain and
attempt to obtain property, to wit, money in the approximate
amount of $157,000, from and with the consent of the X.L.O.
Concrete Corporation and its officers, employees and representa-
tives, which consent had been induced by the defendants' wrong-
ful use of actual and threatened force, violence, and fear of
economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A   213 JJ

## COUNT NINE

The Grand Jury further charges:

44.   In or about April, 1984, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the X.L.O. Concrete Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $157,000 from X.L.O. Concrete Corporation.

(Title 29, United States Code, Section 186(b)(1) and Title 18, United States Code, Section 2.)

9-1635A/1C

A 213KK

COUNT TEN

The Grand Jury further charges:

45. In or about March, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $177,800, from and with the consent of the Century-Maxim Construction Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

MC:lq
9-1635A/1C

A   213 LL

## COUNT ELEVEN

The Grand Jury further charges:

46.    In or about March, 1984, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the Century-Maxim Construction Company, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $177,800 from the Century-Maxim Construction Corporation.

(Title 29, United States Code, Section 186(b)(1) and Title 18, United States Code, Section 2.)

MC:1q
9-1635A/1C

A  213 NH

## COUNT THIRTEEN

The Grand Jury further charges:

48.    In or about April, 1983, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the Technical Concrete Construction Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $70,600, from the Technical Concrete Construction Corporation.

(Title 29, United States Code, Sections 186(b)(1)
and Title 18, United States Code, Section 2.)

MC:iq
9-1635A/1C

A  213 PP

## COUNT FIFTEEN

The Grand Jury further charges:

50.  In or about April, 1984, in the Southern District of New York and elsewhere, the defendant RALPH SCOPO, president and business manager of the Concrete Workers District Council, being a representative of, and being an officer of a labor organization which represents and would admit to membership the employees of the Technical Concrete Construction Corporation, who are employed in an industry affecting commerce, aided and abetted by the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," and others known and unknown to the Grand Jury, unlawfully, wilfully and knowingly would and did request, demand, receive, and accept, and agree to receive and accept the payment of money in the approximate amount of $65,000, from the Technical Concrete Construction Corporation.

(Title 29, United States Code, Sections 186(b)(1)
and Title 18, United States Code, Section 2.)

MC:lq
9-1635A/1C

A   213 QQ

## COUNT SIXTEEN

The Grand Jury further charges:

51. In or about March, 1982, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $73,000, from and with the consent of the Cedar Park Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A 213 RR

## COUNT SEVENTEEN

The Grand Jury further charges:

52. In or about April, 1982, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $134,000, from and with the consent of the North Berry Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A  213 ss

COUNT EIGHTEEN

The Grand Jury further charges:

53. In or about September, 1982, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $117,000, from and with the consent of the G & G Concrete Corporation and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A  213 TT

## COUNT NINETEEN

The Grand Jury further charges:

54. In or about May, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $95,000, from and with the consent of the S & A Concrete Company, Inc., a/k/a "S & A Structures, Inc." and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

mc:iq
9-1635A/1C

A  213uu

## COUNT TWENTY

The Grand Jury further charges:

55. In or about August, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $84,000, from and with the consent of the S & A Concrete Company, Inc., a/k/a "S & A Structures, Inc." and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)

9-1635A/1C

A  213 VV

## COUNT TWENTY-ONE

The Grand Jury further charges:

56.    In or about May, 1984, in the Southern District of New York and elsewhere, the defendants ANTHONY SALERNO, a/k/a "Fat Tony," CARMINE PERSICO, a/k/a "Junior," GENNARO LANGELLA, a/k/a "Gerry Lang," ANTHONY CORALLO, a/k/a "Tony Ducks," SALVATORE SANTORO, a/k/a "Tom Mix," CHRISTOPHER FURNARI, a/k/a "Christie Tick," RALPH SCOPO, and others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly would and did attempt to obstruct, delay, and affect commerce by extortion, in that they would and did attempt to obtain property, to wit, money in the approximate amount of $67,000, from and with the consent of the S & A Concrete Company, Inc., a/k/a "S & A Structures, Inc." and its officers, employees and representatives, which consent had been induced by the defendants' wrongful use of actual and threatened force, violence, and fear of economic loss.

(Title 18, United States Code, Section 1951.)