TAM:KLM:all

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**FILED**
**HARRISBURG, PA**

CHRISTOPHER FURNARI,      :      Civil No. 4:CV-03-2046
      Petitioner      :

JAN 2 6 2004

                    :      (Muir, J.)

MARY E. D'ANDREA, CLERK
Per _____

      v.      :

U.S. PAROLE COMMISSION;      :
WARDEN, FCI ALLENWOOD,      :      **ELECTRONICALLY FILED**
      Respondents      :


## RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS


**THOMAS A. MARINO**
**United States Attorney**

**KATE L. MERSHIMER**
**Assistant U.S. Attorney**
**Atty. I.D. No. PA37430**

**ANITA L. LIGHTNER**
**Paralegal Specialist**

**U.S. Attorney's Office**
**228 Walnut Street, 2nd Floor**
**Harrisburg, PA 17108-1754**
**Phone: 717-221-4482**
**Fax: 717-221-2246**

**Date: January 26, 2004**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     Furnari's Underlying Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     The 1996 Parole Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     Furnari's First Habeas Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     The Statutory Interim Parole Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     Furnari's Third Circuit Appeal & the Statutory Interim Hearing . . . . . . . . . 9

     The USPC's De Novo Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     Furnari's Second Habeas Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     The USPC's Re-evaluation of Furnari's Parole . . . . . . . . . . . . . . . . . . . 16

     Furnari's Third Habeas Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

Caporale v. Gasele,
    940 F.2d 305 (8th Cir. 1991) ............................................................. 20

Coleman v. Perrill,
    845 F.2d 876 (9th Cir. 1988) ............................................................. 20

Funari v. Warden,
    218 F.3d 250 (3rd Cir. 2000) ............................................................. 10

Glumb v. Honstead,
    891 F.2d 872 (11th Cir. 1990) ........................................................... 23

Lynch v. United States Parole Commission,
    768 F.2d 491 (2nd Cir. 1985) ............................................................ 20

Public Interest Research Group v. Magnesium  Elektron, Inc.,
    123 F.3d 111 (3rd Cir. 1997) ............................................................. 22

Sanders v. United States,
    373 U.S. 1 (1963) ............................................................................... 23

Tobon v. Martin,
    809 F.2d 1544 (11th Cir. 1987) ......................................................... 21

United States v. Salerno,
    868 F.2d 524 (2d Cir. 1989) ....................................................... 2,3,4,5

Young v. U.S. Parole Commission,
    682 F.2d 1105 (5th Cir. 1982)(emphasis added) ............................... 21

## FEDERAL STATUTES

28 C.F.R. §2.20 .................................................... 7,14,15, 6,18,22

28 U.S.C. §2241 ............................................................................. 1

28 U.S.C. §2244(a) ....................................................................... 23

18 U.S.C. §4206(a) ............................................................ 7, 19, 20, 21

18 U.S.C. §4208(h)(2) ................................................................. 8,9

## Introduction

On November 13, 2003, petitioner, Christopher Furnari, an inmate at the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed, through counsel, a petition for writ of habeas pursuant to 28 U.S.C. §2241. Furnari challenges the United States Parole Commission's decision denying Furnari parole and serving to a 15-year reconsideration hearing in December 2011. Named as respondents are the United States Parole Commission ("Parole Commission" or "USPC") and the Warden of FCI Allenwood.

On January 6, 2004, this Court issued a rule to show cause directing respondents to address the allegations of the petition within twenty days. As discussed below, respondents maintain that Furnari's claims are barred by "the law of the case" in that this Court previously ruled on, and against, Furnari's claims in Furnari's prior 2002 habeas petition; the claims are also unfounded as a matter of law.

Because this case involves prior proceedings filed by Furnari, which are intertwined with the issues raised in Furnari's most recent habeas petition, we note the pertinent facts in addition to the procedural history and claims Furnari raised in his earlier habeas petitions.

## Statement of Facts

### Furnari's Underlying Conviction

After an eleven-week jury trial in the Southern District of New York, Furnari and others were convicted of Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy, substantive RICO violations, *multiple* counts of extortion, and labor bribery.  On January 13, 1987, Furnari received a **100-year** sentence for these various convictions.  The facts underlying Furnari's convictions are summarized in the Second Circuit's decision affirming Furnari and his co-defendants' convictions and sentences in United States v. Salerno, 868 F.2d 524 (2d Cir. 1989).  See also Exhibit 1 (PSI, p. 17).[1]

Furnari's conviction grew out of his participation in an organization known as the "Commission" of La Cosa Nostra, a nationwide criminal society that operated through local organizations known as "families."  At the time of Furnari's conviction, there were five families in New York – Genovese, Gambino, Lucchese, Colombo and Bonanno – the activities which were coordinated by the La Cosa Nostra ("LCN") Commission.[2]  The bosses of four of the families, including the Lucchese family, controlled the Commission.  Salerno, 868 F.2d at 527-28.

---

[1] Exhibit 1 is Furnari's federal presentence investigation report ("PSR") prepared for the United States District Court for the Southern District of New York.  Respondent submits this PSR *in camera* in order to protect Furnari's privacy rights.

[2] For the sake of clarity, references to the LCN (La Cosa Nistro) Commission will take the form "the Commission."  References to the United States Parole Commission will take the form "USPC" or "Parole Commission."

The alleged purpose of the Commission enterprise, as stated in the indictment, was "to regulate and facilitate the relationships between and among La Cosa Nostra families."   As the Second Circuit observed, it was obvious that proof concerning the essential "enterprise" element of the charged RICO offenses would entail considerable evidence relating to those families, even though the individual families were separate RICO enterprises from the Commission. Salerno, 868 F.2d at 537.

The PSI detailed evidence establishing the structure of LCN families: each was run by a "boss" with the assistance of two deputies known as an "underboss" and "consigliere;" beneath these were "capos" and associates who committed the crimes and shared their criminal proceeds with the family leadership.  (Exhibit 1 at 18).  Furnari was the "consigliere" (counselor) of the Lucchese crime family, a position identified as "practically the equivalent of the underboss."  Salerno, 868 F.2d at 528, 543.  (Exhibit 1, PSI, p. 17-18).

**The 1996 Parole Proceedings**

Although Furnari was sentenced to a 100-year sentence, under the system in place before the present Sentencing Guidelines system, a defendant could be considered for parole after serving only ten years of his sentence.  Thus, Furnari was considered for parole in 1996.

On August 1, 1996, Assistant U.S. Attorney David Kelley sent a letter to the U.S. Parole Commission informing it that Furnari had been a capo prior to becoming consigliere and had been involved in numerous violent acts during his membership in the Lucchese family.  (Exhibit 2).  AUSA Kelley was the Chief of the Organized Crime & Terrorism Section of the U.S. Attorney's Office for the

Southern District of New York where Furnari and the other crime family members had been prosecuted and convicted.

In his letter, AUSA Kelley stated that Furnari had requested that Anthony "Gaspipe" Casso execute one Lee Schleifer, who was suspected of cooperating with law enforcement.  According to the letter, this information was provided to the government both by Casso and by Thomas "Tommy Irish" Carew (a Lucchese family associate) .  (Exhibit 2, p. 2).  Schleifer's dead body, which had suffered a gunshot wound, was found by New York City police on February 18, 1975.  (Id).

AUSA Kelley further reported that Casso and Carew had informed the government that Furnari issued a "contract" to Casso in the early 1980's to kill Richard Taglianetti, another Lucchese family associate.  (Although Casso and Vittorio Amuso took steps towards carrying out the contract, the intended victim "went on the lam" for several years, and it was not carried out until he resurfaced in Brooklyn in 1992, when he was killed by Lucchese family member George Conti).  (Id).

AUSA Kelley reported another murder contract issued by Furnari in the 1970's to kill Joseph Abinanti, which he assigned to Casso and Amuso.  Amuso shot Abinanti, but Abinanti survived the shooting and fled to California.  (Id).  AUSA Kelley's letter also reported that Alfonso D'Arco (former acting Lucchese family boss) had stated that virtually every murder contract carried out by

4

Lucchese family members while Furnari was consigliere was sanctioned by him (Furnari).  (Id).[3]

The Parole Commission conducted an initial parole hearing for Furnari on December 3, 1996.  (See Exhibit 7, Initial Hearing Summary).  At the hearing, Furnari's counsel attacked the credibility of Anthony Casso, arguing that his involvement in a vast number of murders made him not credible.  He argued that D'Arco's statement that Furnari sanctioned murders while he was consigliere was not credible because D'Arco was in custody from 1983 to 1986 and would have known this only through hearsay.  He also claimed that to his knowledge there were no murders committed by the Lucchese family between 1983 and 1986.  (Exhibit 7, p. 1).

AUSA Kelley was present at the hearing and also made a statement.  He stated that D'Arco, as Furnari's counsel had conceded, was an expert on the hierarchy and structure of organized crime and that D'Arco had stated that murders done by Furnari's "crew" of soldiers when he was a capo would only have been done with his knowledge and approval.  Kelley stated that a number of murders were committed by the Lucchese family while Furnari was capo and consigliere.

---

[3]  Furnari's counsel sent a letter to the USPC dated August 19, 1996, which urged the USPC not to rely on the information in Kelley's letter because it had been provided by Anthony Casso, who had not been "tested" by cross-examination in any criminal trial.  (Exhibit 3).  Counsel requested that the USPC not consider Kelley's letter unless the FBI forms 302 regarding debriefings of witnesses were provided to him.  Furnari's counsel also sent a letter to Kelley asking for the FBI forms.  (Exhibit 4).  Kelley declined to release those forms to Furnari's counsel noting that there was no legal basis for the request.  (Exhibit 5).  Furnari's counsel also submitted a letter to the USPC dated December 2, 1996, intended to supplement Furnari's presentation at his initial hearing.  (Exhibit 6).

The hearing examiner requested AUSA Kelley to submit further information regarding those murders to the USPC for consideration, and afforded Furnari's counsel the opportunity to reply to Kelley's information.

AUSA Kelley sent the USPC a letter dated December 11, 1996, providing the information requested by the hearing examiner. (Exhibit 8). AUSA Kelley detailed **fourteen** murders committed by members of Furnari's "crew" during the time he was capo, and after he became consigliere. At least five of these murders occurred after Furnari was consigliere (Vincent Albano, 7/85; Frank DeCicco, 4/86; Nicholas Guido, 12/86; James Hydel, 12/86; Anthony Luongo, 11/86, Vincent Craparotta, 6/84). AUSA Kelley further stated that D'Arco and at least two other sources from the Lucchese family had reported that immediately prior to Furnari's conviction in the instant case, he met with other members of the Lucchese family hierarchy to select successors in the event of conviction and imprisonment. They selected Amuso as boss, Mariano Macaluso to replace Furnari, and elevated Casso to capo. They also decided that Anthony Luongo, who had been vying for the position of boss, would pose a threat to the new administration and must be killed. Casso and Amuso were instructed to murder Luongo, who was in fact killed by them. (Exhibit 8).

Furnari's counsel responded to AUSA Kelley's letter in a letter dated December 18, 1996. (Exhibit 9).

The hearing examiner reviewed the letters provided by AUSA Kelley and by Furnari's counsel fully before reaching his recommendation. He recommended

6

that Furnari's offense be rated as Category Eight severity because of his involvement in murder.  28 C.F.R. §2.20, Chapter Two, Subchapter A, paragraph 201.  Combined with his salient factor score of 8 points, this yielded a parole guideline range of 120+ months.  28 C.F.R. §2.20.  The examiner recommended that Furnari be required to serve to a 15-year reconsideration hearing in December 2011, finding that release of Furnari on parole earlier would depreciate the seriousness of the offense and promote disrespect for the criminal justice system.  See 18 U.S.C. §4206(a).

The Regional Commissioner adopted this recommendation, and Furnari was informed by notice of action dated January 8, 1997.  (See Exhibit 10).  The National Appeals Board affirmed this decision on administrative appeal.  (See Exhibit 11, notice of action on appeal).  In its decision, the Board stated the following:

> You have properly been held accountable for murders committed to further the purposes of the Lucchese or other crime families.  At a minimum, as the capo of a crew in the Lucchese family, you were in a position to be informed of murders ordered by the boss of the family.  Given the hierarchical nature of the organization, it is likely that you directed the murderous acts of your crew members.  And, in fact, the Parole Commission finds the information from the U.S. Attorney's Office on your personal responsibility for several of the murders (victims Schliefer, Taglianetti, and DeCicco) and attempted murder (victim Abinanti) to be credible and reliable, even though much of the information may have come from Anthony Casso, one of the most violent members of your organization.  Reliable information on crimes committed through La Cosa Nostra activities has been provided by members of the criminal organization, including those who have committed violent crimes.  Even if Casso has continued to commit or plot other crimes after his debriefing by federal law enforcement, this does not disqualify him as a reliable source concerning your criminal activities within the Lucchese family.  In many cases, Casso's information is corroborated by information from other sources such as Carew and D'Arco.

Your parole denial is warranted because you approved or participated in the planning of a contract murder (Taglianetti), the murder of a potential informant/witness (Schleifer), and a murder and attempted murder to further the aims of an on-going criminal organization (DeCicco and Abinanti, respectively). Any one of these crimes would support a parole denial. There are no mitigating circumstances, including your age, that justify your parole when weighed against the aggravated nature of the crimes.

(Exhibit 11).

## Furnari's First Habeas Petition

In February 1998, Furnari filed a petition for writ of habeas corpus before this Court at Civil Action Number 4:CV-98-0222 (M.D. Pa.). Furnari challenged the Parole Commission's decision assigning him to offense Category Eight, which resulted in a 15-year delay of parole reconsideration. The Parole Commission's determination rested upon its conclusion that there was sufficient evidence to tie Furnari to a number of murders. In an April 12, 1999 order, this Court denied Furnari's petition for writ of habeas corpus and found that there was a rational basis in the record for the USPC's decision. Furnari appealed.

## The Statutory Interim Parole Hearing

During the pendency of the habeas petition, pursuant to 18 U.S.C. §4208(h)(2), the USPC provided Furnari with a statutory interim hearing on December 9, 1998. (Exhibit 12, hearing summary). At that hearing, Furnari claimed that at the time AUSA Kelley was presenting Casso's statements to the USPC, another prosecutor in a different case was concluding that Casso was not credible and was engaged in new criminal conduct while incarcerated. Furnari

presented an affidavit that AUSA Stambolidis had submitted in another case stating that Casso had lied to prosecutors in matters relevant to that case.  (Id.).

In the hearing summary, the hearing examiner discussed the Stambolidis affidavit and explained his reasons for continuing to credit Casso and the corroborating witnesses.  (Exhibit 12, pp 3-4).  The hearing examiner recommended no change in the prior order that Furnari serve to a 15-year reconsideration hearing in December 2011, and the Parole Commission adopted that recommendation.  (Exhibit 13, Notice of Action).  The Parole Commission did not, however, include the reasons for continuing to rely upon the Casso information in its Notice of Action.  (Exhibit 13).  The National Appeals Board affirmed this decision on administrative appeal by Notice of Action on Appeal dated April 2, 1999.  (Exhibit 14, Notice of Action on Appeal).

**Furnari's Third Circuit Appeal & The Statutory Interim Hearing**

While the denial of Furnari's first habeas petition was on appeal, the Third Circuit took judicial notice of the interim hearing and the notices of action that had followed it.[4]  The Circuit held that the Parole Commission had erred in failing to "make clear in its decision *on the interim hearing* whether it continued to believe that the discredited witness [Casso] was credible or otherwise concluded that there was sufficient information from other sources to tie Furnari to murder," and thereby had failed to follow its regulation requiring a statement of reasons for

---

[4]  These materials had not been before this Court when it made its decision on the habeas corpus petition.

9

denying parole.  Furnari v. Warden, 218 F.3d 250, 252 (3rd Cir. 2000)(emphasis added).  The Circuit stated that "[i]t is not possible to tell from [the Appeal Board's affirmance *after the interim hearing*] whether the Parole Commission continues to rely on Casso and find him credible, or has concluded that there is sufficient additional information tying Furnari to murder to conclude that her is a Category Eight even absent the information provided by Casso." 218 F.3d at 256.

The Court of Appeals ordered the case remanded to the district court "with instructions to grant Furnari's petition conditionally and order the Parole Commission **to provide a new statement of reasons** consistent with this decision." 218 F.3d at 252 (emphasis added).  Importantly, the Circuit did <u>not</u> hold that there was not a rational basis in the record for the USPC's decision.  Rather, it held only that the USPC's decision had not been adequately explained after the interim hearing and the introduction of new information by Furnari.  218 F.3d at 255.  The Court of Appeals expressly stated that it did "not reach Furnari's constitutional challenges to the initial parole determination"; *i.e.*, his argument that the Commission violated due process when it relied on information of Casso's statements provided by AUSA Kelley at the initial parole hearing.  <u>Id</u>.

Following remand, on September 28, 2000, this Court ordered the Parole Commission to either provide Furnari a new statement of reasons **or** a <u>de novo</u> hearing.  The Parole Commission complied with this order by scheduling a <u>de novo</u> hearing.  (Exhibit 15, Notice of Action).

10

## The USPC's De Novo Hearing

The Parole Commission conducted the de novo hearing on December 8, 2000. (Exhibit 16, Initial Hearing Summary). At that hearing, the hearing examiner considered a September 25, 2000 letter submitted to the Parole Commission by AUSA Kelley that discussed the circumstances surrounding the Stambolidis affidavit, which was attached as Exhibit A to that letter.[5] (Exhibit 17, letter and attachment). The hearing examiner also considered a December 6, 2000 letter from Furnari's attorney (Exhibit 18) written in response to AUSA Kelley's letter and a transcript of trial testimony of Carew in the Pagliarulo case (Exhibit 19), which had been submitted by Furnari at the hearing.

After that hearing, the Parole Commission found that Furnari's offense severity was properly rated as Category Eight because it involved murder, conspiracy to murder, and multiple separate acts of extortion through racketeering offenses. The Parole Commission found that a decision more than 48 months above the guideline minimum of 100 months was warranted because of aggravating factors. These factors were:

> You were involved in the hierarchy, first as a Capo and later as a Consigliere of a major organized crime organization and were involved either directly [or indirectly] in the planning or approval of murder and/or attempted murder. Further, the murder of Lee Schleifer was of a prospective informant/witness and the conspiracy to murder/murder of Richard Taglianetti was a contract murder. The Commission has determined that there is sufficient corroboration of information provided by Casso to rely upon the information supplied by Casso notwithstanding the affidavit from AUSA Stambolidis of the Eastern District of New York.

---

[5] The letter also attached copies of AUSA Kelley's two previous letters to the Parole Commission; because these documents are already in the record, they have been omitted from this exhibit to avoid unnecessary duplication.

(Exhibit 20, Notice of Action).   The Parole Commission ordered that Furnari

serve to a 15-year reconsideration hearing in December 2011.[6]  (Exhibit 20,

notice of action).

On administrative appeal, the National Appeals Board (Board) affirmed.

Because the sufficiency of the USPC's statement of reasons previously was at

issue, the Board's findings are included *in toto*:

> The Commission has reviewed your appeal and relevant documents
> from the case file, including the Stambolidis affidavit, the transcript of
> Thomas Carew's testimony in the <u>Pagliarulo</u> case, AUSA Kelley's
> letter of September 25, 2000, and Mr. Brietbart's letter of December
> 6, 2000.  This review does not lead the Commission to conclude that
> a change in the previous offense severity rating or decision is
> necessary or appropriate.  The Stambolidis affidavit raises serious
> doubt about the credibility of Anthony Casso, who has linked you to
> murders/attempted murders.  The Commission has reviewed the
> affidavit and the other available information and concluded that
> Casso's information about your involvement in these crimes is
> accurate.  The reasoning is as follows.
>
> You were the leader of a crew in the Lucchese crime family when the
> crimes were committed.  Casso was a member of your crew.  It is
> unlikely that you would be unaware of any murders or plots to
> murder others in order the fulfill the aims of the criminal enterprise
> given the structure and discipline of the crime family.  Even if only
> the "boss" of a crime family can order or approve a murder, this does
> not mean that crew leaders are unaware of the ordered murder,
> especially since crew members, based on orders presumably passed
> through the crew leaders, carry out the murders.  In addition, there
> appears to be no restriction on crew leaders initiating requests for a
> murder.  The request simply has to be approved by the family boss.
>
> In order to accept your claim that you had no knowledge of the
> murders/attempted murder, the Commission would have to conclude
> that your crew was a renegade unit which committed crimes for
> reasons unrelated to the enterprise.  This conclusion is not

---

[6]  The Parole Commission retained the same 15-year date of December
2011, rather than calculating 15 years from the de novo hearing date (which
would be December 2015), to eliminate the possibility for Furnari to allege
vindictiveness because he had received a harsher parole decision after
successful litigation.  <u>See</u> Exhibit 16, p. 9.

warranted because the motives for the murders/attempted murder committed by your crew were related to the aims/purposes of the enterprise, for example to silence a suspected cooperating individual or punish the wrongdoing of a member or associate. Casso's information simply corroborates the inference that is reasonably made given your leadership role in the crew and Casso's membership in the crew, i.e., that you at the very least knew about, and more likely directed, the murderous activities of members of your crew. You are clearly responsible for the murders/attempted murder under a theory of vicarious criminal liability, and moreover, the information presented shows that you personally solicited or ordered some of the crimes.

AUSA Kelley's assurance in his September 25, 2000 letter as to Casso's credibility regarding your responsibility for the crimes, despite the Stambolidis affidavit, may be reasonably credited. The AUSA checked with the U.S. Attorney's Office in the Eastern District of New York and was informed that while Casso's denials of recent allegation of crimes committed by him and attempts to impeach other witnesses' credibility were unreliable, that office believed that historical information provided by Casso on your activities was still credible. This is consistent with the Stambolidis affidavit itself (para. 22) in which the affiant attests to the value of Casso's information on the past organized crime activities of Vincent Gigante, while at the same time noting the unreliability of Casso's statements concerning more recent events. It is not unreasonable to find that Casso may not be worthy of belief when it came to his denials of his own recent serious crimes which could (and did) lead to his removal as a protected federal witness, and still conclude that he had given reliable information on past activities of organized crime. AUSA Kelley has corrected the record in the past when your attorney challenged the accuracy of adverse information in your presentence report. Therefore, there is no reason to suspect that the AUSA would ignore his duty to provide accurate information to the Commission or seek a parole denial in reckless disregard of the truth.

The AUSA has asserted that Casso's information is corroborated by other sources, including Tommy Carew. The excerpt of Carew's testimony in the Pagliarulo case does corroborate certain significant information provided by Casso, information which shows that you employed violence to advance the interests of or to protect the Lucchese crime family. For example, Carew testified that you ordered Carew and others to assault James Wolford in order to clear the way for Jimmy Bishop, a painters union official friendly to the Lucchese family, to exercise more control over the union. Even if the allegations of Carew and others did not result in a conviction for the assault under the reasonable doubt standard of proof, the

13

Commission finds that the information is reliable and that, using the preponderance of the evidence standard, that it is likely you gave the order to assault Wolford.

Carew also states in his testimony that he was given the assignment of meeting Anthony Casso at a club and helping him with "something". The task turned out to be assisting Casso in the disposal of the body of a man who had been shot and killed. The circumstances described therein indicate that the body was that of Lee Schleifer. In his testimony Carew does not identify you as being present at the club after the murder was committed and Schleifer's body was still present. As your attorney points out, this omission is inconsistent with the representation made by AUSA Kelley. However, Carew's testimony indicates that someone other than Casso gave him an assignment to help Casso. Given that you were the person who introduced Carew to the crime family and your crew, that Carew was your driver/bodyguard at the time of this crime, your leadership role in the crew, and Carew's testimony about other "assignments" made by you, it is more likely than not that you were the person who told Carew to help Casso.

Carew also testified that you gave him the assignment of murdering Joseph Abinanti, the son of a Lucchese member. While this particular contract was recalled, Abinanti was later shot and wounded, according to Casso, by Casso and Vic Amuso at your direction. If you issued a murder contract for Carew to kill Abinanti, there is good reason to credit Casso's information that you also issued such a contract to Casso and Amuso.

Carew testified that he stored multiple handguns for the Lucchese crime family. This information supports the inference that Lucchese family crews, including yours, employed violence to promote the goals of the criminal organization. Therefore, it also indirectly supports the credibility of Casso's statements linking you, a member and leader in the crime family, to murders and attempted murder.

In sum, you have not demonstrated that the information from AUSA Kelley alleging your responsibility for murders and murder plots is unreliable and should not be used to deny you parole. Any one of these crimes (the Schliefer, DeCicco and Taglianetti murders and the attempt to murder Abinanti) would result in a parole denial under the policy at 28 C.F.R. §2.20, Offense Behavior Severity Index, Notes to Chapter Eight offenses.

(Exhibit 21, Notice of Action on Appeal).

**Furnari's Second Habeas Petition**

In April 2002, Furnari filed a second habeas corpus petition at Civil No. 4:02-CV-0555 (M.D.Pa.), in which he raised a number of challenges to the Parole Commission's decision.[7]  Furnari argued that (1) the USPC failed to provide adequate reasons for crediting Casso's testimony; (2) the USPC violated the ex post facto clause by applying a "murder rule" policy[8] to his case; (3) the USPC's decision rested on evidence lacking a sufficient indicia of reliability to satisfy due process and/or the Parole Commission's own regulations and was without a basis in fact; and (4) the USPC relied upon conduct other than the offense of the conviction to set Furnari's offense severity level in violation of the Parole Commission's own rules and in violation of due process.  Exh. 26 (July 18, 2002 Order at pages 11-12)(summarizing the issues).

In a detailed order, except for the ex post facto claim regarding the USPC's application of the murder rule to Furnari's case, this Court rejected all of Furnari's claims.  See Exhibit 26.  The Court held that the Parole Commission **had** had a rational basis to support its conclusions and that the Parole Commission

---

[7]  Because Furnari's claims in his second habeas petition and this Court's decision are relevant to the Parole Commission's arguments concerning the impropriety of Furnari's **third** habeas petition, Furnari's second habeas petition at Civil No. 4:02-CV-0555 is being provided to the Court as Exhibit 22, his supporting brief as Exhibit 23, the government's opposing brief as Exhibit 24, Furnari's reply brief as Exhibit 25, and this Court's July 18, 2002 Order as Exhibit 26.

[8]  The Commission's rules contain a presumption against parole for certain Category Eight offenses, specifically: murder committed to silence a victim or witness, contract murder, murder by torture, murder of a law enforcement officers to carry out an offense, and murder committed to further the aims of an on-going criminal operation.  28 C.F.R. §2.20, Note to guidelines table. This provision was not part of the Commission's rules when Furnari had committed his offenses.

appropriately considered relevant information about Furnari in deciding to deny parole.

As such, the Court ordered the Parole Commission to "reevaluate Furnari's application for parole in accordance with the version of 28 C.F.R. §2.20 in effect when Furnari committed the underlying offenses." Exhibit 26, at page 28. As to **all** other claims, however, the Court denied the habeas petition. Id. Furnari did **not** seek reconsideration of the Court's order nor otherwise apprize the Court in any manner whatsoever that it had misconstrued his arguments raised in the habeas petition. Importantly, Furnari did **not** appeal the Court's decision denying his other habeas claims to the Third Circuit Court of Appeals.

**The USPC's Re-evaluation of Furnari's Parole**

Based upon this Court's July 22, 2002 Order, the Parole Commission reevaluated Furnari's case on the record without reference to "the murder rule," 28 C.F.R. §2.20, Note to guidelines table. The Parole Commission then issued a notice of action stating the following:

> In compliance with the order of the United States District Court for the Middle District of Pennsylvania dated July 18, 2002, the Commission has reviewed your case on the record, without reference to or application of the presumption against parole for certain Category Eight offenders contained in the Note to the Parole guidelines Table, 28 C.F.R. §2.20. The Commission orders no change in its prior decision that parole is denied and that you serve to a 15 year reconsideration hearing in December, 2011. Without presuming that you should be denied parole, the Commission finds that a decision more than 48 months above the guideline minimum of 100 months (and denial of parole) is warranted based on the following pertinent case factors: as a high-ranking member of a Mafia crime family, you are responsible for multiple murders (Schleifer, Taglianetti and DeCicco) and attempted murder (Abinanti) under a theory of vicarious liability, and also because you personally solicited or ordered some of the crimes. These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization. The commission continues to rely upon the reasoning

16

and conclusion about the evidence contained in the April 24, 2001
Notice of Action on Appeal.

(Exhibit 22, Notice of Action).  This decision was affirmed on administrative

appeal.  (Exhibit 23, Notice of Action on Appeal).

## Furnari's Third Habeas Petition

On November 13, 2003, Furnari filed this third habeas action.  In his

habeas petition, Furnari first claims that the Parole Commission violated his due

process rights by  relying on allegedly irrelevant facts which were not part of his

"present offense behavior."  Furnari asserts that the Parole Commission relied on

"alleged prior criminality entirely separate from the offense of conviction" to set

the offense severity category, which argument this Court supposedly had not

understood when Furnari had raised it in his second habeas petition.  (Pet's Br.,

p. 13).  Furnari claims that he did not argue that the Parole Commission may

never consider unrelated criminal conduct but that the Parole Commission may

use such information only to set a parole date above the guideline range (i.e., not

the determine offense severity).  (Pet's Br., p. 14).  Furnari's second argument is

that the Parole Commission's finding that he was accountable for multiple

murders lacks a rational basis in the record distinct from information derived from

Anthony Casso.

## Issue Presented

Should Furnari's arguments in his third habeas petition be denied as
barred by the law of the case, i.e., as previously having been
considered and rejected by this Court?

## Argument

**Furnari'S ARGUMENTS IN HIS THIRD HABEAS PETITION SHOULD BE DENIED AS BARRED BY THE LAW OF THE CASE, I.E., AS PREVIOUSLY HAVING BEEN CONSIDERED AND REJECTED BY THIS COURT.**

1. Furnari's claim regarding the Parole Commission's rating of his offense severity should be summarily dismissed.  The law of the case, based on this court's decision in Civil No. 4:02-CV-0555, is that "the Parole Commission had a rational basis to conclude that the circumstances of the underlying offenses here encompass not only Furnari's position as a high-ranking official within the Lucchese crime family but also crimes attributable to Furnari as a result of his occupying that position."   Exhibit 26 (Order, p. 25).  As this Court held:

> The indictment, presentence report, and other information in the record before us clearly demonstrate the Furnari's ascension within the Lucchese crime family to the role of a high ranking officer was a prerequisite for his membership on the 'Commission.'  His service as consigliere, which could not have occurred without prior service as a capo, was a necessary predicate for participation in the crimes alleged in the indictment.  Furnari's participation in the Lucchese crime family was an inherent factual component of the indictment.  The Parole Commission had a rational basis for attributing to Furnari crimes actually committed by others in the Lucchese family.  There was a rational basis for the Parole Commission to conclude that Furnari's co-conspirators were not only the co-defendants named in the indictment, but also other Lucchese family members committing crimes on behalf of, and in furtherance of, that family's criminal activities.

Id. (Order, pp. 24-25).

Furnari now argues that this Court misunderstood his prior argument in his second habeas petition (which petition, we emphasize, was prepared and briefed by counsel).  Furnari says that he was not saying the Parole Commission may never consider "unrelated" criminal conduct but, rather,  that such consideration is limited to forming a reason to exceed the guideline range, not to determine the

18

offense severity rating.  Furnari further argues that the Parole Commission may consider uncharged information to set the offense severity rating only if it is part of the "offense of conviction."[9]

A major difficulty with this argument is that it is by no means as clear as Furnari  believes it to be that his membership on "the Commission," which was the subject of the indictment, was "entirely separate" from his prior involvement in the Lucchese family.  Pet's Br., p. 15.  Furnari wants to draw a bright line between his activities as a member of the Lucchese family and his activities on "the Commission," but such a line is not warranted by the record.  As this Court has previously held, the Parole Commission could, and did, rationally consider both his membership on "the Commission" and his involvement with the Lucchese family as capo[10] and consigliere to be part of the same course of criminal conduct.  Exh. 26 (Order, pp. 24-28).

A second difficulty with this argument is that the Commission's statute does not say that it may only consider the "offense of conviction."  See 18 U.S.C. §4206(a).  Neither do the Commission's regulations contain any such limitation.

---

[9]  Furnari argues that "[t]he Parole Commission may also set the offense severity category based on criminal conduct which is part of the 'nature and circumstances' of the 'offense of conviction," 18 U.S.C. §4206(a)(1976), even if the defendant has not been separately convicted for that conduct."  Pet's Br., p. 14.

[10]  Furnari states that "neither Carew's nor anyone else's evidence presented to the USPC states expressly that 'captain' is another word for 'capo'." In fact, the presentence investigation report expressly indicates that these terms are interchangable, stating "Beneath these top three men [in each, La Cosa Nostra family, the boss, underboss and consigliere] are Capos or Captains who direct crews of soldiers (i.e. "made" men within La Cosa Nostra) and associates who carry out the day-to-day business of committing crimes and who are required to share their criminal proceeds with the Family leadership."  (Exhibit 1, p. 18).

The Parole Commission's Procedures Manual contains a provision which directs that "[i]n applying the guidelines, the offense severity rating shall reflect the overall circumstances of the present offense behavior." USPC Procedures Manual, ¶2.20-04. Furnari attempts to convert this language into a mandate that the Parole Commission consider only the offense of conviction -- but the language will not support that weight. First, as language contained in a procedures manual, it does not create any legally enforceable rights. E.g., Caporale v. Gasele, 940 F.2d 305, 306 (8th Cir. 1991)(district court does not have jurisdiction to review allegations of violations of the Commission's procedures manual); Coleman v. Perrill, 845 F.2d 876 (9th Cir. 1988)(Parole Commission need not follow provisions in its Procedures Manual and the decision whether or not to follow those internal rules is within the discretion of the Parole Commission and unreviewable); Lynch v. United States Parole Comm'n, 768 F.2d 491, 497 (2nd Cir. 1985) (Parole Commission's Procedures Manual does not create enforceable rights). Furthermore, "present offense behavior" is simply not identical in meaning to "offense of conviction."

The government wishes to bring to the Court's attention that Furnari's counsel has materially misrepresented the Parole Commission's statute by quoting it in a way that imports into it the very words on which his argument turns and that are not actually part of the statute. Furnari cites 18 U.S.C. §4206(a) as requiring the Parole Commission to consider the "offense **of conviction**."[11] (Pet's

---

[11] Furnari states that: "The Parole Commission may also set the offense severity category based on criminal conduct which is part of the 'nature and circumstances' of the 'offense of conviction", 18 U.S.C. §4206(a)(1976), even if the defendant has not been separately convicted for that conduct." Pet's Br., p 14.

Br., p.14, emphasis added).  In fact, the statute does not contain the words "of conviction" on which Furnari's argument heavily relies; rather, it requires the Parole Commission to "consider... the nature and circumstances of the offense and the history and characteristics of the prisoner..."  18 U.S.C. §4206(a).  The Court should not countenance this misleading conduct.

As this Court has previously held, this phrase in §4206 and the language of §4207 have consistently been interpreted by courts to permit the Parole Commission to consider all available relevant information.  Exh. 26 (Order, p. 26); see also Tobon v. Martin, 809 F.2d 1544, 1545 (11th Cir. 1987)("The law is clear that the Parole Commission may consider any relevant evidence or information in reaching its decision."); Young v. U.S. Parole Commission, 682 F.2d 1105, 1108 (5th Cir. 1982)("This Court has affirmed repeatedly the right of the Commission to consider **any evidence that existed at the time of sentencing** that would constitute a mitigating or aggravating circumstance affecting the prisoner's offense rating.")(emphasis added) . Furnari's involvement in the Lucchese family prior to his ascension to "the Commission" is certainly relevant to his suitability for parole release under 18 U.S.C. §4206(a).

A reading of the Court's prior order makes clear that Furnari's argument that the Court misunderstood his argument in the prior case is frivolous.  The Court summarized Furnari's argument as follows:

> Furnari's fourth and final claim is that the Parole Commission unlawfully relied on conduct outside the scope of Furnari's convictions to classify his offense characteristics as Category Eight. He specifically argues that the Parole Commission "set the Offense Severity rating under the guidelines for him **on a basis entirely separate from and unrelated to 'the offense' for which he was convicted**."

Exh. 26 (Order, p. 24, emphasis added). Given this formulation of Furnari's argument in his second habeas petition by the Court, there is no basis for Furnari's current argument that the Court did not understand the argument he was making.  To the contrary, the Court's characterization of the argument is virtually identical to Furnari's current formulation of the argument that the Parole Commission erred in considering information "entirely separate from the offense of conviction to set Mr. Furnari's offense severity category."  Pet's Br., p. 15.

This Court then proceeded to explicate, in the language quoted above, why the Parole Commission could rationally conclude that "Furnari's co-conspirators were not only the co-defendants named in the indictment, but also other Lucchese family members committing crimes on behalf of, and in furtherance of, that family's criminal activities."  Exh. 26 (Order, p. 25).  The legal effect, under the Commission's regulations, of these "other Lucchese family members committing crimes" being petitioner's co-conspirators is that Furnari is legally responsible for their actions even if he did not himself either commit the murders or order the murders.  All that is required is that they were reasonably foreseeable to him or committed by persons under his control.  28 C.F.R. §2.20, Chapter Thirteen, General Note 4.

The Parole Commission has exhaustively explained why the murders of Schleifer, DeCicco, and Taglianetti and the attempted murder of Abinanti are attributable to Furnari under this rule.  Exhibit 21.  This Court clearly understood Furnari's argument in his second habeas petition and found it to be meritless. The claim, therefore, should be dismissed as barred by law of the case, i.e. as already having been litigated.  See Public Interest Research Group v. Magnesium

22

Elektron, Inc., 123 F.3d 111, 116 (3rd Cir. 1997)("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."); 28 U.S.C. §2244(a) ("No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus...."); Sanders v. United States, 373 U.S. 1, 18 (1963)(habeas corpus does not requires federal courts to tolerate piecemeal litigation); Glumb v. Honstead, 891 F.2d 872, 873 (11th Cir. 1990) (magistrate correctly barred claims that had been previously brought, even those purportedly based on subsequent hearings, where underlying issues were identical; court can dismiss claim where petitioner could have raised claim in prior habeas corpus but did not do so).

As a final comment, we note that Furnari **never** advised the Court in any manner, including a motion for reconsideration, that the Court had misunderstood his arguments in his second habeas petition. Nor did Furnari appeal the district court's July 18, 2002 Order to the Third Circuit Court of Appeals to the extent it had otherwise denied Furnari's habeas petition in all other respects. The July 18, 2002 Order, thus, is final and cannot be re-litigated now on the basis of "confusion by the district court" -- confusion that never ever existed in the first place.

2. Furnari's claim that the Parole Commission's factual findings lack a rational basis in the record distinct from evidence derived from Casso is also barred. This Court held in Furnari's second habeas case that the Third Circuit's

decision in Furnari's first habeas petition "indicates that the Parole Commission had the duty to address only the question of whether if found Casso reliable." Exh. 26 (Order, p. 15-16). This Court correctly held that the Third Circuit's decision did not prevent the Commission from considering information derived from Casso. Therefore, the Commission had no legal obligation not to consider information derived from Casso and Furnari's claim that it lacks sufficient basis for its decision distinct from Casso-derived information must be rejected.

Furthermore, this Court has previously held that the Parole Commission explication of its reasons for crediting Casso, even though not required by the Third Circuit's opinion, would fulfill any obligation on the Commission's part to state its reasons for crediting Casso, and provide all the process petitioner is due. Exh. 26 (Order, p. 17).

Finally, this Court previously held that "the Parole Commission had a rational basis to accept and rely upon the information received at Furnari's last parole hearing [*i.e.*, December 8, 2000]." Exh. 26 (Order, p. 23). The instant claim is an attempt to litigate yet again whether there is a rational basis in the record in support of the Parole Commission's rating of Furnari's offense as Category Eight. This Court has already held that the Commission's decision is

24

supported by a rational basis in the record (which record need not exclude information derived from Casso). Thus, this Court should dismiss this claim.[12]

## Conclusion

For the foregoing reasons, respondents request this Court to deny petitioner's third petition for habeas corpus should be denied.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

/s/ Kate L. Mershimer
KATE L. MERSHIMER
Assistant U.S. Attorney
Atty. I.D. No. PA 37430
ANITA LIGHTNER
Paralegal Specialist
228 Walnut Street, 2nd Fl.
P.O. Box 11754
Harrisburg, PA 17108-1754
Email: kate.l.mershimer@usdoj.gov
Phone: 717-221-4482
Fax: 717-221-2246

OF COUNSEL:

MICHAEL A. STOVER, General Counsel
SHARON GERVASONI, Attorney
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, MD 20815

Date:   January 26, 2004

---

[12] As is clear from the government's response, the government believes Furnari is trying to relitigate issues previously addressed by the Court. Because this is improper, the government has not briefed the substantive aspects of Furnari's duplicaitve claims. Should the Court conclude that Furnari has raised a new issue not previously addressed, however, we respectfully request an opportunity to submit a supplemental brief on that identified issue. Likewise, should the Court seek additional briefing on any other matter, the government will promptly do so.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER FURNARI,** | : | **Civil No. 4:CV-03-2046** |
| **Petitioner** | : | |
| | : | **(Muir, J.)** |
| **v.** | : | |
| | : | |
| **U.S. PAROLE COMMISSION;** | : | |
| **WARDEN, FCI ALLENWOOD,** | : | **ELECTRONICALLY FILED** |
| **Respondents** | : | |

## CERTIFICATE OF SERVICE BY MAIL

   The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

  That on January 26, 2004, she served a copy of the attached

## RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

James H. Feldman, Jr.
Law Office of Allen Ellis
50 Rittenhouse Place
Ardmore, PA 19003

Peter Goldberger
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003

         /s Anita L. Lightner
         ANITA L. LIGHTNER
         Paralegal Specialist